UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICHARD J. GRAVELLE,

                    Petitioner,

                                                Case No. 19-cv-1712-pp

            v.

LANCE WIERSMA
and NATE FOGLE,[1]

                    Respondents.

**ORDER DISMISSING *HABEAS* PETITION (DKT. NO. 1), DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY AND DISMISSING CASE**

On November 12, 2019, the petitioner filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his June 14, 2017 conviction in Washington County for his sixth OWI offense. Dkt. No. 1. The court will deny the petition, decline to issue a certificate of appealability and dismiss the petition and the case.

---

[1] At the time he filed the petition, the petitioner was incarcerated at the Thompson Correctional Center. https://appsdoc.wi.gov/lop/details/detail. The Department of Corrections website indicates that the position of superintendent at that facility currently is vacant. https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/ThompsonCorrectionalCenter.aspx. The Wisconsin Department of Corrections inmate locator web site indicates that on April 20, 2021, the petitioner was released to supervision. https://appsdoc.wi.gov/lop/details/detail. On April 8, 2021, the court received from the petitioner a notice of change of address. Dkt. No. 20. On April 30, 2021, counsel for the respondent notified the court that the respondents should be listed as the official in charge of the Wisconsin Department of Community Corrections, Lance Wiersma, and the petitioner's supervising agent, Nate Fogle. Dkt. No. 22.

1

## I.    Background

### A.    State Case

#### 1.    *Guilty Plea and Sentencing*

On April 26, 2017, the petitioner pled guilty to one count of a sixth offense of operating a motor vehicle while intoxicated. Dkt. No. 14-1; State v. Richard J. Gravelle, Case No. 2017CF113 (Washington County), available at https://wcca.wicourts.gov. On June 14, 2017, the Washington County Circuit Court sentenced the petitioner to a four-year term of initial confinement followed by four years of extended supervision. Dkt. No. 14-1 at 1. The court determined that the petitioner was not eligible for Wisconsin's Challenge Incarceration Program or its Substance Abuse Program under Wis. Stat. §§973.01(3g) and (3m). Id. at 2. The court entered the judgment of conviction on June 16, 2017. Id.

#### 2.    *Postconviction motions*

On March 30, 2018, the petitioner filed in Washington County Circuit Court a post-conviction motion for re-sentencing or modification of sentence. Dkt. No. 14-2 at 24; Gravelle, Washington County Case No. 2017CF113. The petitioner argued that the sentencing court had "relied on incorrect information in imposing sentence for [the petitioner's] sixth offense OWI case." Dkt. No. 14-2 at 25. On May 17, 2018, the court denied the motion. Dkt. No. 14-2 at 24-30.

The circuit court rejected the petitioner's claim that it had incorrectly assumed the petitioner's prior alcohol and other drug abuse (AODA) treatment had been involuntary. Id. at 26. The court explained that while it had been

aware of the petitioner's prior treatment, it had not assumed anything about the treatment and had expressed no concern over whether the treatment was voluntary or involuntary. Id. The circuit court rejected the petitioner's speculation that the court had made the petitioner ineligible for an earned release program (ERP) based a vague statement by the presentence writer about the petitioner's prior AODA treatment. Id. at 27. The court explained that although it had found that the petitioner was statutorily eligible for ERP, "public safety and the seriousness of [the petitioner's] case warranted the court's decision to make [him] ineligible for an early earned release." Id. The circuit court explained that the petitioner was wrong in his belief that the prosecutor was required to present mitigating information at his sentencing hearing and that the court did not read the pre-sentence investigation report. Id. at 28. Finally, the court stated:

> [The petitioner] claims the court wrongly interpreted [his] statements as an indication [the petitioner] felt he could "drive or operate a vehicle safely at a high BAC level." This is nonsense. It is patently absurd to suggest that this court, or any other court, would believe that [the petitioner], or any other OWI suspect or defendant, would actually tell law enforcement, a PSI writer, or a judge, that they could safely drive a vehicle at a .40 level.

Id. at 28-29.

The petitioner appealed his conviction and the circuit court's order denying his postconviction motion to the Wisconsin Court of Appeals, arguing that the circuit court should have allowed him to participate in the ERP. Dkt. No. 14-2 at 1-23. The petitioner asserted that the circuit court had placed too much weight on the fact that this was the petitioner's sixth OWI offense and

had given no consideration to other "contravening con[s]iderations." Id. at 9. He also argued that the circuit court had relied on inaccurate information when sentencing him by finding that his prior alcohol treatment efforts were involuntary, that his alcohol treatment efforts were unsuccessful and that he posed a danger to the public based on his past crimes. Id. at 10-19.

On February 20, 2019, the Court of Appeals summarily affirmed the conviction and the order denying the petitioner's postconviction motion. Dkt. No. 14-5. Addressing the issue of whether the circuit court improperly had determined that the petitioner's alcohol treatment efforts were involuntary, the Court of Appeals held that the circuit court had not relied on any assumption of whether the petitioner's prior treatment was voluntary or involuntary and instead had focused on the fact that the treatment had not been successful. Id. at 4. As to the petitioner's claims regarding the effectiveness of his prior treatment and whether he posed a danger to the public given his prior criminal record, the appellate court observed no inaccuracy in the information upon which the circuit court had relied, nothing that the petitioner had confirmed that the information was accurate outside of some minor corrections. Id.

The Court of Appeals also agreed with the circuit court that the petitioner was not entitled to a sentence modification based on a new sentencing factor, because no new factor existed. Id. at 5. Finally, the Court of Appeals found no merit to the petitioner's contention that the circuit court had erred in its sentencing by giving too much weight to improper sentencing factors and relying on irrelevant ones. Id. The court found that the sentencing court had

4

considered the three primary sentencing factors: (1) the gravity of the offense; (2) the need to protect the public; and (3) the petitioner's character and rehabilitative needs. Id. at 6. The Court of Appeals noted that the sentence was within the applicable statutory range and that that it "was based on proper consideration of appropriate factors that were adequately set forth in the record." Id.

The petitioner petitioned the Wisconsin Supreme Court for review. Dkt. No. 14-7. On June 11, 2019, the Supreme Court denied the petition. Dkt. No. 14-8.

On April 17, 2020, the petitioner filed a motion for resentencing or sentence modification under Wis. Stat. §974.06. Dkt. No. 21-1. Citing Birchfield v. North Dakota, 579 U.S. 438 (2016) and State v. Dalton, 383 Wis. 2d 147 (Wis. 2018), the petitioner argued that at sentencing the circuit court improperly had considered his refusal to submit to a blood alcohol sample as an aggravating factor, in violation of his constitutional rights. Id. at 2-3. The petitioner filed a supplement to his §974.06 motion, arguing in the alternative that he was harmed by ineffective assistance of postconviction counsel. Dkt. No. 21-2.

On June 16, 2020, the circuit court denied the petitioner's motion. Dkt. No. 21-5. The court explained that under Dalton, a sentence was improper only if the sentencing court "explicitly increase[ed] a sentence based on a defendant's refusal to take an evidentiary test." Id. at 2. The court reasoned that it had mentioned the refusal only "briefly while describing the underlying

5

facts of [the petitioner's] case" and that "[t]here [was] nothing in the record to suggest, much less establish, that the court relied on the refusal to increase [the petitioner's] sentence." Id. Referring to the sentencing transcript, the court explained that it had imposed the sentence based on the high blood alcohol test result, the petitioner's claims that he normally operated at around a .40 alcohol level, the dangerousness of the offense, the petitioner's prior OWI convictions, the petitioner's additional criminal convictions and his prior failures to comply with the terms of his probation. Id. The petitioner did not appeal the circuit court's decision. See Gravelle, Washington County Case No. 2017CF113.

B.    Federal *Habeas* Petition

On November 12, 2019, the petitioner filed this federal *habeas* petition. Dkt. No. 1. The petition asserted one ground for relief: the sentencing judge improperly increased the petitioner's sentence because the petitioner had exercised a constitutional right under the Fourth Amendment. Id. at 7. The petitioner alleged that the judge who sentenced him also was the judge who had issued the warrant for his blood draw. Id. He asserted that the sentencing judge had commented about the petitioner going from "being cooperative to being completely uncooperative and they had to get a warrant." Id. at 7. The petitioner alleged that the sentencing judge "aggravated" his sentence because of the petitioner's "refusal," "as if invoking rights is a character defect." Id. The petitioner's supporting brief clarified that "[the petitioner] refused to submit to

6

a blood draw without a warrant. This right is protected by the Fourth Amendment and case law supporting this assertion exists." Dkt. No. 2 at 1.

On October 19, 2020, the court screened the petition under Rule 4 of the Rules Governing Section 2254 Cases, allowed the petitioner to proceed on what the court construed as a due process claim and ordered the respondent to answer or otherwise respond. Dkt. No. 7.

On January 19, 2021, the respondent filed his answer. Dkt. No. 14. On January 27, 2021, the petitioner filed his brief in support of the petition. Dkt. No. 15.[2] The petitioner argues that:

> The sentencing court violated the due process clause of the fourteenth amendment when punishing the petitioner for requiring police to obtain a valid warrant, something the law plainly allows him to do. The sentencing court also violated Federal and State law and abused its discretion when it considered the petitioner's invocation of fourth amendment rights concerning a warrantless blood draw as an aggravating factor at sentencing.

Id. at 9. The petitioner asserts that the Wisconsin Court of Appeals "declined to enforce the forfeiture rule, chose to consider the merits of this issue, but then remained silent on it." Id.

On April 30, 2021, the respondent filed his brief in opposition to the petition. Dkt. No. 21. The respondent argues that the petitioner's claim is procedurally defaulted. Id. at 5. He asserts that the petitioner never fairly

---

[2] The petitioner titled his brief in support of the petition as a "Brief in Opposition and Motion for Summary Judgment." Dkt. No. 15. In a supplemental filing, the petitioner explained that he should have titled his brief as "Petitioner's Brief in Support." Dkt. No. 18 at ¶7. In an order dated March 25, 2021, the court accepted the petitioner's representation that he meant his January 27, 2021 "Petitioner's Brief in Opposition and Motion for Summary Judgment" to be his brief in support of the petition. Dkt. No. 19 at 5.

7

presented his claim to the Wisconsin courts because the petitioner failed to present the claim on his state court direct appeal. Id. The respondent argues that the petitioner first mentioned Birchfield in his reply brief in his direct appeal to the court of appeals, but did not mention state law interpreting and applying Birchfield until he filed a motion for reconsideration. Id.

The respondent acknowledges that the petitioner presented the claim in a §974.06 postconviction but contends that because the petitioner did not appeal that decision, the claim is procedurally defaulted. Id.

In his reply brief, the petitioner argues that:

> In my Brief in Chief to the Wisconsin Court of Appeals I raised the issue that my sentencing court had abused its discretion by unlawfully punishing me for exercising a constitutional right and that right was that I had invoked my fourth amendment right against unlawful search and seizure.

Dkt. No. 23 at 1. The petitioner asserts that in his "reply brief" he cited Birchfield as a "proper reply." Id. The plaintiff says that to ensure that he complied with exhaustion requirements, he filed a §974.06 motion. Id. at 2. The petitioner concedes that he did not appeal the circuit court's denial of his §974.06 motion but contends that because he raised the issue in his direct appeal, his claim "had already fairly been presented to the intermediate and high State court." Id.

## II.   Analysis

### A.   Exhaustion

Under the Antiterrorism and Effective Death Penalty Act of 1996, persons incarcerated under state court judgments are required to "exhaust" the

remedies available to them in the state court system before a district court will consider the merits of constitutional claims in a federal *habeas* petition. 28 U.S.C. §2254(b)(1)(A). To exhaust his claims, "[a] petitioner must raise his constitutional claims in state court 'to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue.'" Weddington v. Zatecky, 721 F.3d 456, 465 (7th Cir. 2013) (quoting Villanueva v. Anglin, 719 F.3d 769, 775 (7th Cir. 2013).

The petitioner appealed his sentence, and the denial of his March 2018 post-conviction motion, to the Wisconsin Court of Appeals. He petitioned the Wisconsin Supreme Court for review of the court of appeals' order affirming the circuit court's sentence and order. He has presented claims to each level of the state court system. The respondent argues, however, that the petitioner did not "fairly present" to the court of appeals and the Wisconsin Supreme Court the constitutional claim that he has raised in this court.

B.    Fair Presentment

To give the state court the opportunity to correct any errors it may have made, the incarcerated person must "fairly present" the claim in each appropriate state court, "thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004). "Fair presentment 'does not require a hypertechnical congruence between the claims made in the federal and state courts' it merely requires that the factual and legal substance remain the same.'" Hoglund v. Neal, 969 F.3d 819, 832 (7th Cir. 2020) (quoting Anderson v. Benik, 471 F.3d 811, 814-15 (7th Cir. 2006)).

9

The basic question is whether "in concrete, practical terms . . . the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Kurzawa v. Jordan*, 146 F.3d 435, 442 (7th Cir. 1998). [Courts] give a "generous interpretation" to *pro se* filings in this context. *Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004).

Id. at 832-33.

In his federal *habeas* petition, the petitioner asserts that he was "sentenced in part for exercising a constitutional right"—his demand that the officers obtain a warrant for a blood draw. Dkt. No. 1 at 6-7. In his brief in support of the petition, the petitioner explained that in his brief to the Wisconsin Court of Appeals, he'd cited Birchfield in arguing that the "sentencing court had based its discretion by unlawfully punishing [him] for exercising a constitutional right and that right was that [he] had invoked his fourth amendment right against unlawful search and seizure." Dkt. No. 23 at 1.

In Birchfield, the Supreme Court confirmed that taking a blood sample is a search. Birchfield, 579 U.S. at 455. It held that the "search incident to arrest" exception to the Fourth Amendment's warrant requirement "does not justify the warrantless taking of a blood sample." Id. at 476. The Birchfield Court concluded that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." Id. at 477. Before this court, the petitioner argues that his sentence was unconstitutionally enhanced for exercising his right to demand that police obtain a warrant before taking a blood sample. The question, in the "fair presentment" context, is whether the petitioner raised that argument at every level of the state court system.

10

As explained above, on March 30, 2018, the petitioner filed in the circuit court a post-conviction motion requesting resentencing or a sentence modification, asserting that the sentencing court had relied on inaccurate or incorrect information. Gravelle, Washington County Case No. 2017CF113. The petitioner did not attach a copy of that motion to his *habeas* petition, nor did the respondent attach it to his answer or to his brief in opposition; the court has no way of knowing the specific arguments the petitioner raised in that motion. But in denying the motion, the circuit court judge did not mention any argument that the court unlawfully increased the petitioner's sentence because he refused to consent to a blood draw. See Dkt. No. 14-2 at 24-30.[3] The court cannot determine whether the petitioner argued to the trial court judge that the court unconstitutionally increased his sentence based on his refusal to consent to a blood draw and his demand that officers obtain a warrant.

Even if the petitioner had argued to the trial court judge in his post-conviction motion that the court had unconstitutionally enhanced his sentence for demanding that officers obtain a warrant for the blood draw, the petitioner did not make that *constitutional* argument on appeal. In his brief on direct appeal, the petitioner listed as one of the issues on appeal the fact that the sentencing court had "formulated [his] unduly harsh sentence by . . . reliance upon improper factors." Dkt. No. 14-2 at 4. In the body of the brief, the

---

[3] In fact, the state argued on appeal that the petitioner had forfeited his argument that the trial court gave too much weight to improper sentencing factors and relied on irrelevant ones. Dkt. No. 14-5 at 5 n.2. The court of appeals declined to apply the forfeiture rule and ruled on the merits of the claims as the petitioner had presented them. Id.

11

petitioner listed those allegedly improper factors; among them, he listed

"<u>REFUSAL</u>" and stated the following:

> [The petitioner] submitted to the preliminary breath test and it registered the result that [the petitioner] had told police it would. [The petitioner] was then placed under arrest for OWI. Police read to [the petitioner] from a form called "Informing the Accused" and "requested" that he submit to a more invasive blood test. This request falls under Wisconsin's implied consent laws Wis. Stat. 343.305 and has its own sanctions for noncompliance provided for under that statute. [The petitioner] invoked his constitutional rights under the Fourth Amendment and a search warrant was obtained from Judge Muehlbauer. [The petitioner] was not belligerent, combative, or vulgar. To reply upon the fact that a person invoked his Fourth Amendment rights protecting him from unreasonable search and seizure as a means to increase the amount of infringement on ones Liberty through greater terms of incarceration is clearly and abuse of discretion. "refusal" Sent. Trans. at 23, 24.

Dkt. No. 14-2 at 10-11.

In his brief in support of his petition, the petitioner characterizes his appellate argument this way:

> In my Brief in Chief to the Wisconsin Court of Appeals I raised the issue that my sentencing court had abused its discretion by unlawfully punishing me for exercising a constitutional right and that right was that I had invoked my fourth amendment right against unlawful search and seizure. I cited case law about abuse of discretion.

Dkt. No. 23 at 1. The petitioner himself affirms that he presented his argument to the Wisconsin Court of Appeals as a question of whether the trial court had *abused its discretion*, not a question of whether the trial court had violated the constitution.

A claim that the sentencing court abused its discretion by enhancing a sentence based on the defendant's refusal to consent to a blood draw is not the same as a claim that the sentencing court violated the Constitution by doing

12

so. "[F]or a constitutional claim to be fairly presented to a state court, both the operative facts and the 'controlling legal principles' must be presented to that court." Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992) (citing Picard v. Connor, 404 U.S. 270, 277 (1971). "It is not enough to that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made.'" Id. (quoting Anderson v. Harless, 459 U.S. 4, 6 (1982)). The petitioner did not argue to the court of appeals that the trial court violated his *constitutional* rights by enhancing his sentence. He argued that the court *abused its discretion*. And that was how the Court of Appeals analyzed his argument. The court discussed a sentencing court's "broad discretion to consider and weigh relevant sentencing factors." Dkt. No. 14-5 at 5. It discussed the factors the trial court had considered. Id. at 6. It concluded, "[W]e see no error in the circuit court's discretionary sentencing decision." Id.

In his brief in support of his federal *habeas* petition, the petitioner emphasizes that in his *reply* brief to the Wisconsin Court of Appeals, he cited Birchfield. Dkt. No. 23 at 1. In his appellate reply brief, the petitioner argued the following:

> Is erroneous exercise of discretion a question of law? Yes. [The petitioner] focused a majority of his Appellate Brief on numerous instances of erroneous exercise of discretion that were the basis of his unduly harsh sentence. [The State] briefed the belief that [the petitioner's] claim is without merit . . . . Is the question of law of sufficient public interest to merit a decision? The Attorney General thinks it is alright to impose a harsher criminal penalty for refusing to submit to a blood test without a warrant. . . . The sentencing court's Judge Muehlbauer absolutely thinks it is alright to impose harsh criminal penalties on a defendant due to refusal to submit to

13

a blood test without a warrant. These to High Ranking Legal Athorities [sic] being in agreement about an injustice being just is cause for concern, cause for correction, and therefor [sic] is also of sufficient public interest. **Refusal Sent. Trans pg23 , 24 alsoBrief of Appellant pg 8.**

**Birchfield v. North Dakota, 136 S.Ct. 2160 (June 23, 2016) held (e) 2.**

Motorists may not be criminally punished for refusing to submit to a blood test based on legally implied consent to submit to them. It is one thing to approve implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply, but quite another for a State to insist upon an intrusive blood test and then to impose criminal penalties on a refusal to submit. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

Dkt. No. 14-4 at 6-7.

The above quote confirms that in his *reply* brief, the petitioner drew a connection between his exercise of his Fourth Amendment right and his demand that officers obtain a warrant for a blood draw. Although the petitioner still referenced abuse of discretion and couched his argument in terms of abuse of discretion, the reply brief did more than merely cite the Fourth Amendment. It connected the petitioner's exercise of his Fourth Amendment rights to his allegedly enhanced sentence, and it cited a case standing for the proposition that punishing someone for exercising his Fourth Amendment rights violates the Constitution.

But under Wisconsin law, an appellant may not raise an issue for the first time in a reply brief. A.O. Smith Corp. v. Allstate Ins. Cos., 588 Wis. 2d 475, 492 (Wis. Ct. App. 1998). The Court of Appeals has explained that the rule is rooted in "fundamental fairness" because "[i]t is fundamentally unfair for an

14

appellant to withhold an argument from its main brief and argue it in its reply brief [as] such conduct would prevent any response from the opposing party." Id.; see also In re Bilsie's Estate, 100 Wis. 2d 342, 346 n.2 (Wis. Ct. App. 1981) (explaining that as a general rule, the court of appeals will not consider issues raised by appellants for the first time in a reply brief).

There is no evidence the petitioner raised this constitutional argument in his post-conviction motion to the trial court. He did not make the constitutional argument to the Court of Appeals in his brief-in-chief. He made the argument for the first time only in his reply brief; that is too late, according to Wisconsin law.[4]

The petitioner is representing himself, which means that this court must construe his petition liberally. Perruquet v. Briley, 390 F.3d 505, 512 (7th Cir. 2004) (citations omitted). So the court also considers the fact that after the Wisconsin Supreme Court denied his petition for review, the petitioner filed a Wis. Stat. §974.06 motion with the sentencing court. [5] Dkt. No. 21-1. The

---

[4] The petitioner did make the argument to the Wisconsin Supreme Court in his petition for review; the first issue in the petition was whether it is "permissible for the Circuit Court to lengthen a sentence and/or to deny eligibility to the Department of Corrections' Earned Release Program because a citizen defendant has exercized [sic] his constitutional right to refuse a blood draw without a warrant?" Dkt. No. 14-7 at 3.

[5] The petitioner filed the §974.06 motion in state court on April 17, 2020—five months *after* he filed this federal *habeas* petition. Dkt. No. 21-1. He did not ask this federal court to stay the *habeas* proceedings while he returned to state court to exhaust remedies. Only *after* the trial court had ruled on the §974.06 motion did the petitioner file with this court a document titled "Additional Decision from Circuit Court." Dkt. No. 5. In this document, he informed the court that he'd filed the §974.06 motion on April 14, 2020 and that the trial court had denied it on June 16, 2020. Id. The fact that the petitioner presented

petitioner explained in his brief in support of the federal *habeas* petition that "[b]ecause I take things literally sometimes, I wanted to make sure I wouldn't be disqualified because of the exhaustion rule so I sent it back to the sentencing court in a 974.06 motion and as I stated in it the purpose was to 'serve as opportunity for the Circuit Court to rule, and my obligation to exhaust State remedies.'" Dkt. No. 23 at 2. In the §974.06 motion, the petitioner clearly articulated the constitutional argument, citing and quoting from <u>Birchfield</u> and arguing that the cases he cited showed "that the sentence imposed in this case was imposed in violation of the U.S. Constitution or constitution or laws of this state." Dkt. No. 21-1 at 2-3.

The trial court denied the motion, pointing out that it had mentioned the refusal to consent to the blood draw "briefly" while describing the facts and stating that it recalled clearly the petitioner's case and was "certain that the refusal did not cause the court to increase the sentence." Dkt. No. 21-5 at 2. The court emphasized that it imposed the sentence it did based on the "high test result of .257 (more than ten times [the petitioner's] legal limit)," the petitioner's "troubling claim that he normally operates at around a .40 alcohol level, the dangerousness of the offense, the prior OWI convictions and other non-OWI convictions on [the petitioner's] record, and [the petitioner's] prior failure on Probation." <u>Id.</u>

---

his constitutional issue to the trial court *after* filing the federal *habeas* petition, and without asking the federal court to stay the *habeas* proceedings, arguably weighs against the court considering the §974.06 petition as an exhaustion attempt. Given the petitioner's self-represented status, however, the court has taken the motion into account.

Liberally construing the petition, the court concludes that the petitioner *did* fairly present the constitutional argument to the trial court through his Wis. Stat. §974.06 motion. But the petitioner did not appeal the trial court's decision to the court of appeals. The only time the petitioner raised the constitutional question with the Wisconsin Court of Appeals was in his *reply* brief on direct appeal. He did not give the appellate court the opportunity to consider the constitutional question by properly raising it in an appeal from the denial of his §974.06 motion.

The court cannot conclude that the petitioner fairly presented his constitutional claim to every level of the Wisconsin courts, which means that the petitioner did not exhaust his claims before bringing this federal *habeas* petition.

The court notes that a claim is not "exhausted" if the petitioner still "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. §2254(c). A claim *may* be exhausted if "circumstances exist" that render the available state court process "ineffective to protect the rights of the applicant." 28 U.S.C. §2254(b)(1)(B)(ii). It does not appear to this court that the petitioner still has the right to raise the constitutional question in state court. The trial court denied his §974.06 petition on June 16, 2020. At the outside, the petitioner had ninety days to appeal that ruling. See Wis. Stat. §808.04(1). That time long has passed. But the petitioner's failure to appeal does not constitute a "circumstance" that renders the available state court process ineffective to protect his rights.

C.    Cause and prejudice or manifest injustice

If a petitioner has exhausted his claims in state court and there is "no longer any state corrective process available to him, it is not the exhaustion doctrine that stands in the path to habeas relief, . . . but rather the separate but related doctrine of procedural default." Bolton v. Akpore, 730 F.3d 685, 696 (7th Cir. 2013) (quoting Perruquet, 390 F.3d at 514). If the federal court determines that the petitioner's claims are procedurally defaulted, it must consider whether to excuse the default. Coleman v. Thompson, 501 U.S. 722, 750 (1991). A court may excuse default if the petitioner can show either (1) cause for the default and resulting prejudice or (2) that the failure to consider the federal claim will result in a fundamental miscarriage of justice. Id. (citations omitted). "[T]he existence of cause for a procedural default must ordinarily turn on whether the petitioner can show that some objective factor external to the defense impeded [the petitioner's] efforts to comply with the state's procedural rule." Murray v. Carter, 477 U.S. 478, 488 (1986).

The petitioner has not demonstrated cause and prejudice to excuse his default or shown that a miscarriage of justice will result if this court denies *habeas* relief. "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). "Prejudice is established by showing that the violation of the petitioner's federal rights 'worked to his *actual* and substantial disadvantage, infecting his entire trial

18

with error of constitutional dimensions.'" Id. (citing United States v. Frady, 456 U.S. 152, 170 (1982)). The petitioner has not argued that any external impediment prevented him from raising his constitutional claim to the trial court in his post-conviction motion or in his initial brief to the Wisconsin Court of Appeals.

Perhaps more important, the petitioner has not demonstrated that denial of his petition would result in a manifest injustice. "The fundamental-miscarriage-of-justice exception applies only in the 'extremely rare' and 'extraordinary case' where the petitioner is actually innocent of the crime for which he is imprisoned. Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003) (citing Schlup v. Delo, 513 U.S. 298 (1995)). To support a colorable claim of actual innocence, the petitioner must establish that "it was more likely than not that no reasonable juror would have convicted him light of new evidence." Id. at 679 (quoting Schlup, 513 U.S. at 316). The petitioner has not argued that he is innocent. The petitioner pleaded no contest to a sixth offense OWI. Because the petitioner's ground for relief rests on his claim that the sentencing court improperly sentenced him—not that that he is actually innocent—he cannot invoke the "fundamental-miscarriage-of-justice exception to overcome his procedural default.

While the court need not make this determination, the court also notes that even if it had reached the petitioner's claim on the merits, it would have denied the petition. At the June 14, 2017 sentencing hearing, the prosecutor walked through the events that led to the conviction. Dkt. No. 14-9 at 4. After

describing the events that caused the police to stop the petitioner, the prosecutor recounted:

> [The petitioner] was arrested after he complied with all the field sobriety tests. He submitted to a preliminary breath test. However, when he was asked to submit to an evidentiary chemical test of his blood, at this point the defendant became more uncooperative. He made some statements that he wanted to drag the process out as long as possible, where prior to that he had made some statements about wanting to speed things up and just get to jail. So ultimately a search warrant was obtained, the defendant's blood was drawn, and he was found to have a blood alcohol concentration of .257, which is exceedingly high.

Id. at 5, lines 14-24.

The prosecutor then turned to the aggravating factors, citing the fact that it was the petitioner's sixth offense, his contacts with the criminal justice system, the danger the petitioner posed to the community, the fact that he'd had treatment only while on supervision and the extent of the petitioner's "AODA issues." Id. at pp. 5-7. The prosecutor also acknowledged the petitioner's pro-social qualities. Id. at 8. The prosecutor recommended a term of three to four years of initial confinement, followed by the maximum term of extended supervision. Id. at 8.

After hearing from probation, defense counsel and the defendant, the court began discussing the relevant sentencing factors. Id. at 22. In describing "what actually happened," the court stated:

> . . . [The petitioner] got stopped for speeding, it was not because of any bad driving. And yeah, maybe he clipped the corner of the curb pulling into the Fleet Farm parking lot, but even that's not the worse driving in the world. I have seen people do that completely sober because they are paying attention to something else. So the driving isn't bad.

20

On the other hand, [the petitioner] goes from being cooperative to being complete uncooperative and refusing to take the test and they had to get a search warrant.

Id. at 23, lines 3-11. The court then turned to the seriousness of OWI offenses generally, the need to protect the public, the petitioner's characteristics and the petitioner's record. Id. at pp. 12-27. The judge expressed his concern about the safety of the public. Id. at 28, lines 3-11. He expressed concern about the situation the petitioner had put his 13-year-old son in. Id. at 28, lines 11-13. He reiterated the gravity of the offense. Id. at 28, lines 13-15. The court then imposed a sentence of four years of initial confinement—the high end of the State's recommendation—despite having earlier discussed his temptation to impose the maximum sentence. Id. at 28, lines 16-18. In terms of programming, the court concluded that under state law, the petitioner was eligible for the Substance Abuse Earned Release Program, but the court did not implement that eligibility because of "the programs you have been in and . . . the fact that you are here." Id. at 29, lines 23-25; 30, lines 1-3.

The sentencing court's only reference to the petitioner's refusal to consent to a blood draw was the single sentence in its description of the events that gave rise to the petitioner's arrest. The court did not reference the refusal to consent when discussing the sentencing factors. The court did not reference the refusal to consent when explaining the factors that concerned it most. The court did not reference the refusal to consent when discussing the petitioner's history and characteristics. There is nothing in the sentencing transcript to indicate that the court took the refusal to consent into account in imposing the

21

sentence recommended by the State—a sentence that could have been, by the court's own discussion, much higher. The court confirmed this in its order denying the petitioner's post-*habeas* §924.06 motion.

The petitioner failed to exhaust his constitutional argument. The constitutional claim is procedurally defaulted. The petitioner has not shown cause for that default, and he cannot show prejudice of any kind—actual innocence or even a constitutional violation. The court will dismiss the petition.

### III.  Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. See also 28 U.S.C. §2253(c)(1). This requirement exists because "[a] state prisoner whose petition for a writ of *habeas corpus* is denied by a federal district court does not enjoy an absolute right to appeal." Buck v. Davis, 580 U.S. 100, 115 (2017). This court may issue a certificate of appealability only if the petitioner makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Peterson v. Douma, 751 F.3d 524, 528 (7th Cir. 2014) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). The court declines to issue a certificate of appealability because no reasonable jurist could debate that the petitioner is

not entitled to *habeas* relief.

## IV. Conclusion

The court **ORDERS** that the *habeas* petition is **DISMISSED** because the petitioner failed to exhaust his state remedies.

The court **DECLINES TO ISSUE** a certificate of appealability.

The court **ORDERS** that the case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 30th day of May, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

23